**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**GREENVILLE DIVISION**

| | | |
|---|---|---|
| Jeremy Lankford, | ) | |
| | ) | Civil Action No.: |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT** |
| | ) | (Jury Trial Demanded) |
| Super Ego Holding, LLC, Ego Express, Inc., | ) | |
| Gray Falcon United, LLC f/k/a Super Ego | ) | |
| Logistics, Inc., Redwog LLC, ITS Logistics, | ) | |
| LLC, ITS National, LLC, Muzafarkhon | ) | |
| Jakhongirov, and Vladimir Ilic, | ) | |
| | ) | |
| Defendants. | ) | |

The Plaintiff would respectfully show this Honorable Court that:

**PARTIES, JURISDICTION, AND VENUE**

1.     Plaintiff Jeremy Lankford is a citizen and resident of Spartanburg County, State of South Carolina.

2.     Defendant Super Ego Holding, LLC ("Super Ego") is a limited liability company organized under the laws of the State of Illinois, with its principal place of business located at 677 North Larch Avenue, Elmhurst, Illinois 60126.  Aleksandar Mimic is believed to be its CEO or owner.

3.     Defendant Super Ego subjected itself to the laws of this state by dispatching its vehicles and/or drivers on the public roads in South Carolina.  Thus, Defendant Super Ego is subject to the jurisdiction of this Court.

4.     Defendant Ego Express, Inc. ("Ego Express") is corporation organized under the laws of the State of Illinois, with its principal place of business located at 225 Arlington Heights

1

Road, Suite 105, Elk Grove Village, Illinois 60007. Aleksandar Mimic is believed to be its CEO or owner. Defendant Ego Express, Inc. is a company affiliated with Defendant Super Ego Holding. Defendant Ego Express's USDOT number is listed as 2903977. Defendant Ego Express was the lessor for the Volvo tractor involved in the collision, VIN 4V4BC9EH9TN697442.

5.      Defendant Gray Falcon United, LLC, formerly known as Super Ego Logistics, Inc. ("Gray Falcon"), is a limited liability company organized under the laws of the State of Illinois, with its principal place of business located at 1431 Opus Pl. Suite 110, Downers Grove, IL 60515. Aleksandar Mimic is believed to be its CEO or owner. Defendant Gray Falcon is a company affiliated with Defendant Super Ego Holding. Defendant Gray Falcon's USDOT number is listed as 3288433.

6.      Defendant Redwog, LLC ("Redwog") is a company organized and existing under the laws of the State of North Carolina with its principal place of business at 290 Ashley Drive, Rockwell, North Carolina 28138. Defendant Redwog is a company affiliated with Defendant Super Ego and Aleksandar Mimic. Defendant Redwog's USDOT number is listed as 2522039.

7.      Defendant ITS Logistics, LLC ("ITS Logistics") is a company organized and existing under the laws of the State of Nevada. Upon information and belief, Defendant ITS Logistics owned, controlled, and leased out the trailer being hauled by Defendant Jakhongirov at the time of the collision with Plaintiff's vehicle. Upon information and belief, Defendant ITS Logistics acted as a broker for Defendant Redwog, including for the shipment on the date of the subject incident with Plaintiff.

8.      Defendant ITS National, LLC ("ITS National") is a company organized and existing under the laws of the State of Nevada. Upon information and belief, Defendant ITS National, owned, controlled, and leased out the trailer being hauled by Defendant Jakhongirov at

the time of the collision with Plaintiff's vehicle.  Upon information and belief, Defendant ITS National acted as a broker for Defendant Redwog, including for the shipment on the date of the subject incident with Plaintiff.

9. Aleksandar Mimic is the president or manager for multiple Defendants and is, upon information and belief, an owner, controller, and/or policymaker of Defendant Super Ego Holding, Defendant Ego Express, Defendant Gray Falcon, and related entities.

10. Upon information and belief, Defendant Vladimir Ilic is a citizen and resident of the State of Illinois.  Upon information and belief, Defendant Vladimir Ilic is affiliated with Defendant Super Ego Holding, Defendant Redwog, and Aleksandar Mimic.  Upon information and belief, Defendant Ilic was the owner of the Volvo tractor involved in the collision, VIN 4V4BC9EH9TN697442.

11. Defendant Super Ego Holding, Defendant Ego Express, Defendant Gray Falcon, Defendant Redwog, Defendant ITS Logistics, LLC, and Defendant ITS National, LLC, and Defendant Ilic are collectively referred to as the Trucking Defendants.

12. Upon information and belief, Defendant Muzafarkhon Jakhongirov is a citizen and resident of the State of Ohio.  Upon information and belief, Defendant Jakhongirov is affiliated with and/or employed by the Trucking Defendants.

13. The Trucking Defendants employ or contract with drivers, including Defendant Muzafarkhon Jakhongirov, to transport freight in interstate commerce through their subsidiaries and affiliates.

14. The Trucking Defendants are vicariously liable for the negligence, acts, and/or omissions of their employees, agents, contractors, and staff.  All allegations contained herein against the Trucking Defendants also refer to and include the actual and/or apparent agents,

3

employees, and/or servants of Defendants either directly or vicariously, under the principles of partnership, agency, apparent authority, corporate liability, ostensible agency, and respondeat superior.

15.    Upon information and belief, Defendant Jakhongirov was an employee and/or agent of the Trucking Defendants at all relevant times herein, including at the time of the subject automobile collision on March 4, 2026.  At all times relevant hereto, Defendant Jakhongirov was acting within the course and scope of his employment and/or agency with the Trucking Defendants.

16.    The Trucking Defendants are an affiliated group of transportation carriers, leasing companies, brokers, logistic companies, dispatchers, and holding companies that are owned and operated in common.

17.    Some or all of the Trucking Defendants collectively operate as a single trucking enterprise, utilizing numerous affiliated corporate entities to obscure responsibility, evade liability, shift assets, and continue operations under new names.  The enterprise functions as a unified business operation with a common purpose: to generate revenue through the acts of commercial vehicle drivers.

18.    The Trucking Defendants exercised exclusive control over dispatch, routes, rates, settlement calculations, work assignments, dispatch availability, and records related to the work and driving being performed by Defendant Jakhongirov on March 4, 2026.

19.    Some or all of the Trucking Defendants operate as an integrated trucking enterprise whose operations are interrelated with shared equipment, truck yards, dispatch, ELG log providers, staff, facilities, common management, common ownership, and common control.

20.    The Trucking Defendants supplied each other and Defendant Jakhongirov with commercial motor vehicles, including trucks and trailers.

21.     Upon information and belief, the Trucking Defendants brokered trucking business with each other, to include the route driven by Defendant Jakhongirov on March 4, 2026.

22.     At all times relevant hereto, upon information and belief, Defendant Jakhongirov operated a tractor trailer at the time of the collision with Plaintiff that was owned, leased, assigned, dispatched, and/or operated by Defendants.

23.     At all times relevant hereto, the tractor trailer driven by Defendant Jakhongirov on March 4, 2026, was operated and/or controlled for the financial benefit of Defendants.

24.     The Trucking Defendants have (1) comingled their businesses and operated interchangeably to illegally misuse their federal operating authorities; and (2) commonly shared equipment, drivers, dispatchers, and other staff.

25.     Defendants are vicariously liable for the negligence, acts, and/or omissions of their employees, agents, contractors, and staff.  All allegations contained herein against Defendants also refer to and include the actual and/or apparent agents, employees, and/or servants of Defendants either directly or vicariously, under the principles of partnership, agency, apparent authority, corporate liability, ostensible agency, and respondeat superior.

26.     At all times relevant hereto, upon information and belief, the Trucking Defendants were engaged in the joint undertaking of a particular transaction for mutual profit, mutual control, and mutual contribution.

27.     At all times relevant hereto, the Trucking Defendants acted as a joint venture for transporting goods in interstate commerce.

28.     Personal jurisdiction is proper because Defendants' conduct was purposefully directed to South Carolina and caused harm in South Carolina.

29.     Defendants have contacts with the State of South Carolina, derive revenue from the State of South Carolina, and were doing business by operating the subject tractor trailer in South Carolina at the time of the incident made the basis of this lawsuit.

30.     The parties to this action and the acts and omissions complained of herein are subject to the jurisdiction of this Court and venue is proper.

31.     The amount in controversy exceeds the minimum jurisdictional limits of this Court.

### **FACTS**

32.     Defendant Super Ego offers shipping and transportation logistics services.  As part of this business, Super Ego offers truck leases to prospective drivers, either for a specific leasing term or with lease-to-own provisions.

33.     Upon information and belief, Defendant Super Ego has maintained a network of over 1,000 owner-operator drivers.

34.     Defendant Super Ego Holding and related entities, including, but not limited to, Defendant Ego Express, Defendant Gray Falcon, and Defendant Redwog, operate a network of chameleon carriers.[1]

35.     Defendant Super Ego Holding and its chameleon carrier scheme has been the subject of a 60 Minutes investigation and story.[2] Defendant Super Ego Holding and its network of commercial trucking and leasing companies, are "one of the most notorious chameleon schemes." (*Id*).

---

[1] "Chameleon carriers" are trucking companies that go out of business due to safety concerns, loss of insurance, or anticipated fines only to start back up again under a different DOT number but continue to use common ownership, equipment, offices, drivers and/or managers. Chameleon carriers do this to avoid the consequences of their unsafe practices.

[2] 60 Minutes "Risk on the Road" https://www.youtube.com/watch?v=ylbvU-lmcpI

6

36.    Defendant Super Ego Holding and its related network of entities and carriers have thousands of safety violations, have a history of failing to follow local, state and federal regulations, altering records, and have been involved in numerous accidents.

37.    Some or all the Trucking Defendants appear to be alter egos of each other and/or in a joint venture together as they used the same employees, drivers, and commingled assets.

38.    Upon information and belief, Defendant Jakhongirov was working as a driver for the Trucking Defendants at the time of the collision with Plaintiff's vehicle on March 4, 2026.

39.    On March 4, 2026, Plaintiff was driving a vehicle north on Interstate 85 in Greenville, South Carolina.

40.    While Plaintiff was driving north on Interstate 85 on March 4, 2026, Defendant Jakhongirov was driving a tractor trailer owned, operated, leased, and/or maintained by the Trucking Defendants north on Interstate 85. The trailer being pulled by Defendant Jakhongirov at the time of the subject collision was owned, operated, leased, and/or maintained by Defendant ITS Logistics and/or Defendant ITS National.

41.    At the time and place above, the tractor driven by Defendant Jakhongirov violently struck the back of Plaintiff's vehicle, causing a multi vehicle collision on Interstate 85.

42.    Defendant Jakhongirov was at fault for causing the collision with Plaintiff's vehicle.

43.    At the time of the collision with the Plaintiff, Defendant Jakhongirov was operating the tractor-trailer in the line, scope, and course of his employment or agency with the Trucking Defendants.

44.    At the time of the collision, the Trucking Defendants owned, leased, used, and maintained the tractor trailer being driven by Defendant Jakhongirov.

45. Defendant Jakhongirov failed to keep a proper lookout at the time of this collision.

46. Defendant Jakhongirov was driving too fast for conditions at the time of this collision.

47. Defendant Jakhongirov failed to keep the tractor-trailer under proper control at the time of this collision.

48. As a direct and proximate cause of Defendants' actions, omissions, and the automobile collision on March 4, 2026, Plaintiff suffered serious injuries and damages.

49. The Trucking Defendants are vicariously liable for the acts and/or omissions of Defendant Jakhongirov pursuant to the doctrine of respondeat superior.

50. As a direct and proximate cause of Defendants' actions and omissions, Plaintiff suffered catastrophic injuries and damages, including spinal cord injuries and paralysis.

51. As a direct and proximate cause of Defendants' actions and omissions, Plaintiff has suffered actual damages, permanent injuries, physical pain, suffering, disfigurement, disability, psychological injuries and trauma, financial harm, impairment of health and bodily efficiency, emotional distress, mental anguish, and loss of enjoyment of life.

### FIRST CAUSE OF ACTION
**(Negligence and Negligence Per Se)**

52. Plaintiff incorporates by reference, as if fully set forth, each and every allegation in the preceding paragraphs.

53. At all times relevant to this Complaint, Defendant Jakhongirov was operating a commercial motor vehicle transporting goods or property in intrastate or interstate commerce.

54. Defendants Super Ego Holding, Ego Express, Redwog, and Gray Falcon appear to be alter egos of each other and/or in a joint venture together as they used the same employees and

commingled assets.  As such, these Defendants were in a joint venture; were alter egos of each other; and/or were agents of each other so that each is liable for the actions of the other.

55.     In order to undertake such actions, Defendant Jakhongirov must have the knowledge and skills necessary for the safe operation of the commercial motor vehicle.

56.     The safe operation of a commercial motor vehicle requires specialized knowledge, skills, and additional training necessary for the safe operation of passenger vehicles because:

a.      commercial motor vehicles are heavier than passenger vehicles and take longer to stop, as compared to a passenger car operating at the same pre-braking speed, which changes the principles and procedures necessary to keep a proper lookout and to maintain a safe speed under the circumstances;

b.      commercial motor vehicles are heavier and longer than passenger vehicles, take longer to execute turning and lane change maneuvers, and have articulating trailers, as compared to passenger vehicles operating at the same pre-turn or lane change speed, which changes the principles and procedures necessary to execute safe turning, lane change, and backing maneuvers;

c.      commercial motor vehicles are heavier than passenger vehicles and cause more significant property damage and/or personal injury or death in collisions, as compared to passenger cars operating at the same pre-collision speed and trajectory;

d.      commercial motor vehicles utilize air brakes, which have a delay in actuation following pedal depression not found in passenger vehicles, which changes the total stopping distance of commercial vehicles and changes the

principles and procedures necessary to safely stop a commercial vehicle; and,

e.     commercial motor vehicles pose more of a risk of causing personal injury, death, or property damage in a collision, as compared to a collision involving a passenger vehicle operating at the same pre-collision speed and trajectory.

57.     In order to undertake the safe operation of a commercial motor vehicle, Defendant Jakhongirov must have knowledge and skills in many areas, including the following:

a.     the procedures for safe vehicle operations;

b.     the proper procedures for performing basic maneuvers such as stopping;

c.     the importance of conducting a proper visual search;

d.     the importance of proper visual search methods, including seeing ahead;

e.     the importance of understanding the effects of speed, including speed and visibility, and speed and stopping distance;

f.     the procedures and techniques for controlling the space around the vehicle, including the importance of space management, space cushions, and controlling speed;

g.     preparations and procedures for night driving, including night driving factors such as vision, fatigue, and inexperience; unfamiliarity with the roads, other road users; and vehicle factors;

h.     the basic information concerning when and how to make emergency maneuvers, including evasive steering, and emergency stop.

10

58.     In addition to the basic knowledge and skills required of commercial motor vehicle drivers, it is standard in the industry for drivers to understand that to be a safe driver you need to know what is going on all around your vehicle.

59.     In addition to the basic knowledge and skills required of commercial motor vehicle drivers, it is standard in the industry for drivers to understand that not looking properly is a major cause of collisions.

60.     In addition to the basic knowledge and skills required of commercial motor vehicle drivers, it is standard in the industry for drivers to look 12 to 15 seconds ahead.

61.     In addition to the basic knowledge and skills required of commercial motor vehicle drivers, it is standard in the industry for drivers to understand their vehicle's total stopping distance at a given speed.

62.     In addition to the basic knowledge and skills required of commercial motor vehicle drivers, it is standard in the industry for drivers to understand that they should always be able to stop in the distance you can see ahead.

63.     In addition to the basic knowledge and skills required of commercial motor vehicle drivers, it is standard in the industry for drivers to always be looking for potential hazards in order to have time to plan a way out of any emergency.

64.     In addition to the basic knowledge and skills required of commercial motor vehicle drivers, it is standard in the industry for drivers to think about what emergencies could develop when they see potential hazards and to figure out what to do. Reasonably safe commercial drivers are always prepared to take action based on their plans; in this way, they will be a prepared, defensive driver.

65.     In addition to the basic knowledge and skills required of commercial motor vehicle drivers, it is standard in the industry for drivers to understand the dangers of distracted driving – anything that takes your attention from driving. Reasonably safe drivers understand that whenever you are driving a vehicle and your full attention is not on the driving task, you put other vehicles and pedestrians in danger.

66.     In addition to the basic knowledge and skills required of commercial motor vehicle drivers, it is standard in the industry for drivers to understand that driving at night is more dangerous and that they are at greater risk at night because drivers cannot see hazards as quickly as in daylight, so they have less time to respond.

67.     In addition to the basic knowledge and skills required of commercial motor vehicle drivers, it is standard in the industry for drivers to drive slowly enough to be sure you can stop in the distance you can see ahead.

68.     In addition to the basic knowledge and skills required of commercial motor vehicle drivers, it is standard in the industry for drivers to understand that you need space ahead in case you must stop suddenly.

69.     Plaintiff's injuries and damages were proximately caused by the negligence, gross negligence, recklessness, and/or wantonness of Defendants.

70.     Defendant Jakhongirov had a duty to operate the commercial vehicle in compliance with state and federal laws, rules, regulations, and guidelines designed to protect the health and safety of all persons traveling on the highway.

71.     Defendant Jakhongirov failed to comply with state and federal laws, rules, regulations, and guidelines designed to protect the health and safety of all persons traveling on the highway.

72.    Defendant Jakhongirov had a duty to operate the tractor-trailer in a reasonable manner and to comply with the rules governing the operation of vehicles on South Carolina roadways.

73.    The negligence, gross negligence, recklessness, and/or wantonness of Defendant Jakhongirov and the other Defendants include, but is not limited to, the following specific acts:

 a.    Traveling at an excessive speed given the circumstances;

 b.    Failing to maintain a safe distance of travel between the tractor-trailer and the Plaintiff's vehicle;

 c.    Failing to keep a proper lookout;

 d.    Failing to operate the tractor-trailer at a safe speed;

 e.    Failing to comply with the operating, safety, and training rules of his employer;

 f.    Failing to comply with the applicable rules of road;

 g.    Failing to comply with applicable motor carrier safety regulations;

 h.    In colliding with Plaintiff's vehicle;

 i.    In failing to take evasive action to avoid the collision;

 j.    In failing to properly apply his brakes or maintain the same in proper working order;

 k.    In failing to adhere to policies and procedures that would have prevented the injuries and damages suffered by Plaintiff;

 l.    In failing to yield the right of way;

 m.    In failing to follow the proper procedures for safe commercial vehicle operations;

n.    In failing to have the requisite knowledge and skill regarding the procedures for safe vehicle operations;

o.    In being inattentive;

p.    In failing to observe the condition of traffic;

q.    In failing to steer or take other evasive action so as to avoid the collision;

r.    In failing to have the requisite knowledge and skill regarding the requirement to look ahead;

s.    In failing to observe driver regulations as required by the Code of Federal Regulations, Title 49, Chapter III, Section 390.11;

t.    In failing to possess and demonstrate basic vehicle control skills as required by the Code of Federal Regulations, Title 49, Chapter III, Section 383.113(a);

u.    In failing to possess and demonstrate safe driving skills as required by law and applicable regulations;

v.    In failing to possess and demonstrate adequate driving skills as required by the law and applicable regulations;

w.    In failing to operate the commercial vehicle in accordance with the laws, ordinances, and regulations of the jurisdiction in which the vehicle was being operated;

x.    In operating his vehicle without proper space management, including space cushions, and improperly controlling space ahead;

y.    In failing to have the requisite knowledge and skill regarding the requirement to look 12 to 15 seconds ahead;

z.    In failing to have the requisite knowledge and skill regarding his vehicle's total stopping distance at a given speed;

aa.    In failing to operate his vehicle as a prepared, defensive driver;

bb.    In operating the tractor trailer while distracted;

cc.    In operating the tractor trailer while fatigued or tired;

dd.    S.C. Code § 56-5-730 which relates to required obedience to traffic laws;

ee.    S.C. Code § 56-5-1520(A) which relates to driving a speed that is reasonable and prudent under the conditions and so as to avoid colliding with another vehicle;

ff.    S.C. Code Ann. § 56-5-1930 which relates to following too closely;

gg.    For brokering the shipment and for allowing the use of the tractor trailer by the Trucking Defendants and Defendant Jakhongirov;

hh.    In failing to properly maintain the tractor trailer.

ii.    In failing to exercise the degree of care which a reasonably prudent person would have exercised under the same or similar circumstances;

jj.    any other regulations or laws which were violated as ascertained during the course of discovery; and

kk.    In such other and further particulars as may be ascertained during the course of discovery or trial of this case.

74.    At the time of the collision on March 4, 2026, Defendant Jakhongirov was acting within the course and scope of his employment and/or agency with the Trucking Defendants.

75.     Defendants' careless, negligent, grossly negligent, willful, wanton, reckless and unlawful acts were a direct and proximate cause of the collision and the resulting catastrophic injuries and damages to Plaintiff.

76.     Plaintiff seeks actual and punitive damages under this cause of action.

77.     The Trucking Defendants are vicariously liable for the negligence of Defendant Jakhongirov under the doctrine of respondeat superior.

## SECOND CAUSE OF ACTION
### (Vicarious Liability/Respondeat Superior against Trucking Defendants)

78.     Plaintiff incorporates by reference, as if fully set forth, each and every allegation in the preceding paragraphs.

79.     At all times relevant to the allegations contained in this Complaint, Defendant Jakhongirov was working in the course and scope of his employment for the Trucking Defendants.

80.     The Trucking Defendants are liable for the acts and omissions of Defendant Jakhongirov under the doctrines of respondeat superior, master/servant, and/or agent/principal.

81.     At all times relevant to this Complaint, Defendant Jakhongirov was operating a commercial motor vehicle in intrastate or interstate commerce under USDOT authority.

82.     The Trucking Defendants are liable for the acts and omissions of Defendant Jakhongirov while he was operating the tractor trailer, including under any Trucking Defendant's authority by virtue of the Federal Motor Carrier Safety Regulations.

83.     Plaintiff is informed and believes that he is entitled to judgment against Defendants for actual and punitive damages in an appropriate amount.

**THIRD CAUSE OF ACTION**
**(Negligence against Trucking Defendants)**

84.     Plaintiff incorporates by reference, as if fully set forth, each and every allegation in the preceding paragraphs.

85.     The Trucking Defendants operate as commercial motor carriers, shippers, brokers, logistic companies, and dispatchers.

86.     In return for the privilege to operate commercial motor vehicles on the public roadways, the Trucking Defendants must make certain safety related certifications and verifications.

87.     Reasonably safe motor carriers develop and implement policies, practices, and procedures to give effect to the minimum safety standards contained in the Federal Motor Carrier Safety Regulations to reduce or eliminate preventable collisions that may cause injury, death, or property damage on the public roadways.

88.     Reasonably safe motor carriers train and educate their drivers regarding the safe operation of commercial motor vehicles.

89.     Reasonably safe motor carriers utilize information and training materials from industry associations and third-party safety vendors to train and educate their drivers regarding the safe operation of commercial motor vehicles.

90.     The safe operation of commercial motor vehicles includes practices and procedures related to speed management, space management, seeing ahead, hazard perception, accident countermeasures, and fatigue and distracted driving awareness.

91.     Reasonably safe motor carriers utilize publicly available government, industry, and trade publications regarding the preventability of highway collisions to design, develop, and

17

implement safety management controls which are designed to reduce collisions involving commercial motor vehicles.

92. Motor carriers should never allow or permit a driver to operate their commercial motor vehicles if the driver does not have the required knowledge or skill to safely operate the vehicle.

93. To be qualified to operate a commercial motor vehicle, a driver must have experience and/or training to safely operate the type of vehicle; must be physically qualified; must have a currently valid CDL; and must furnish the motor carrier a list of current driving violations.

94. The Trucking Defendants should never allow or permit a driver to operate a commercial vehicle on their behalf if the driver is not qualified to do so.

95. The Trucking Defendants should never allow or permit a driver to operate commercial motor vehicles if the driver does not have the required knowledge or skill to safely operate the vehicle.

96. The Trucking Defendants owed a duty to members of the traveling public to use reasonable care to investigate and evaluate, on an ongoing basis, the competency and safety record of any carrier or driver used to transport freight.

97. This duty included, but was not limited to, conducting adequate due diligence into the safety history and fitness of carriers before engaging them, reviewing FMSCA safety data, refrain from tendering loads to carriers with known or discoverable unsafe histories, and implement and follow carrier vetting procedures.

98. Defendants negligently and/or gross negligently with a reckless, conscious disregard for the rights and safety of others chose to endanger the motoring public by using the Trucking

Defendants and Defendant Jakhongirov to haul freight, including the shipment being hauled on the date of the subject crash with Plaintiff.

99.     The injuries and damages incurred by the Plaintiff were directly and proximately caused by the Trucking Defendants' careless, negligent, grossly negligent, willful, wanton, reckless, and unlawful acts in one or more of the following particulars by failing to use reasonable care in the:

a.     Failing to design, develop, and/or implement adequate safety management controls related to speed management, space management, seeing ahead, total stopping distance, hazard perception, accident countermeasures, and/or fatigue and distracted driving awareness.

b.     Failing to train Defendant Jakhongirov regarding speed management, space management, seeing ahead, hazard perception, accident countermeasures, and fatigue and distracted driving awareness

c.     Failing to properly monitor and supervise the driving habits of their drivers, including Defendant Jakhongirov;

d.     Instruction of their drivers, employees, and/or agents, including Defendant Jakhongirov;

e.     Entrustment of a tractor trailer to their drivers, employees, and/or agents, including Defendant Jakhongirov;

f.     Supervision of business operations in failing to properly monitor the driving habits and records of drivers, employees, and/or agents, including Defendant Jakhongirov;

g.    Compliance with federal and/or state regulations and industry standards, as referenced in this Complaint and as developed during the discovery in this case;

h.    Failing to utilize available information and technology to properly monitor their drivers, employees, and/or agents, including Defendant Jakhongirov, for compliance with company polices and/or state and federal regulations;

i.    In failing to budget an appropriate amount of money to design, develop, and implement safety management controls in the areas of speed management, space management, seeing ahead, hazard perception, accident countermeasures, and fatigue and distracted driving awareness; and,

j.    In failing to utilize available technology to monitor and audit the safety performance of their drivers, employees, and agents, including Defendant Jakhongirov.

100.    The Trucking Defendants had a duty to comply with state and federal laws, rules, regulations, industry standards and guidelines designed to protect the health and safety of all persons traveling on the highway.

101.    The Trucking Defendants had a duty to properly hire, train, supervise, and retain their drivers.

102.    The Trucking Defendants breached these duties and failed to comply with state laws, rules, regulations, industry standards, internal policies, and guidelines.

103.    The Trucking Defendants' careless, negligent, willful, wanton, reckless and unlawful acts were a direct and proximate cause of the collision and resulting injuries and damages to the Plaintiff.

104.    Plaintiff is informed and believes that he is entitled to judgment against the Trucking Defendants for actual and punitive damages in an appropriate amount.

### FOURTH CAUSE OF ACTION
**(Against Trucking Defendants – Joint Venture/Joint Enterprise)**

105.    Plaintiff incorporates by reference, as if fully set forth, each and every allegation in the preceding paragraphs.

106.    As of March 4, 2026, the Trucking Defendants were engaged in a joint venture to haul goods and material in interstate commerce for profit.

107.    Upon information and belief, the Trucking Defendants are in contact through numerous means of communication, including, but not limited to, email, faxes, telephone, and mobile application to track status of shipment from origin to delivery.

108.    As a result of the transportation, the Trucking Defendants earned, or intended to earn, a profit.

109.    On March 4, 2026, the Trucking Defendants controlled the tractor trailer that struck Plaintiff through their duly authorized agents, servants, and/or employees.

110.    On March 4, 2026, Defendant Jakhongirov was performing a service for the benefit of the Trucking Defendants, namely the transportation of goods and material for profit.

111.    The Trucking Defendants were aware that Defendant Jakhongirov was transporting the goods and materials.

21

112. The Trucking Defendants had the right to control Defendant Jakhongirov in performing this service.

113. The Trucking Defendants exercised this right of control over Defendant Jakhongirov.

114. At all times relevant hereto, the Trucking Defendants enjoyed similar or supplementary business functions in their full-service motor carrier, logistics, transportation, dispatch, and distribution activities to achieve their unified goal of transportation of goods to its final destination in a timely fashion for profit.

115. At all times relevant hereto, the Trucking Defendants acted as affiliated or sister companies possessing common ownership and/or administrative nexus.

116. At all times hereto, the Trucking Defendants also acted as a joint venture and/or joint enterprise when operating their full-service motor carrier, transportation, dispatch, logistics, and distribution activities to achieve their unified goal of delivery of goods to its proper destination in a timely fashion for profit.

117. Upon information and belief, at all times relevant hereto, the Trucking Defendants were responsible for operational management of Defendants' business and played an active role in the ongoing business activities of Defendants' business and had full authority to direct activities of Defendants' business.

118. Upon information and belief, the Trucking Defendants shared in profits that were generated from equipment they operated, owned, leased, controlled, or managed.

119. As a direct and proximate cause of the above-mentioned acts and omissions, Plaintiff suffered severe and permanent injuries.

120.    Plaintiff seeks punitive damages against the Trucking Defendants under this cause of action.

## FOR A FIFTH CAUSE OF ACTION

**(Violation of the South Carolina Unfair Trade Practices Act -as to Trucking Defendants)**

121.    Plaintiff restates and realleges each and every allegation as if repeated herein verbatim.

122.    The Trucking Defendants' actions and/or omissions as described herein violate S.C. Code Ann. § 39-5-10, *et seq.,* which pertains to unfair methods of competition and unfair or deceptive acts or practices.   The Trucking Defendants' actions were calculated to result in monetary gain at the expense of the Plaintiff – and thereby suffered ascertainable loss as a result of the Trucking Defendants' actions in violation of the Act, as set forth herein.

123.    Unfair methods of competition and unfair or deceptive acts or practices are defined and declared unlawful in S.C. Code Ann. § 39-5-10, *et seq.:*

> § 39-5-20(a).   **Unfair Trade Practices.**   Unfair methods of competition and unfair or deceptive acts or practices in the conduct or any trade or commerce are hereby declared unlawful.

124.    The Trucking Defendants violated the SCUTPA by engaging in and proposing to engage in unfair trade practices by means of the following unlawful, unfair and fraudulent acts and practices:

> a.   Knowingly and intentionally failing to investigate and evaluate the competency and safety record of any carrier or driver used to transport freight;

23

b. Knowing and intentionally failing to conduct adequate due diligence into the safety history and fitness of carriers and drivers before engaging them;

c. Knowing and intentionally failing to review FMSCA safety data on carriers and drivers;

d. Knowing and intentionally failing to refrain from tendering loads to carriers and drivers with known or discoverable unsafe histories;

e. Knowing and intentionally failing to implement and follow carrier vetting procedures;

f. Knowingly and intentionally using carriers and drivers that were not competent to safely transport freight;

g. Knowingly and intentionally using carriers and drivers that lacked a basic understand of federal trucking regulations and the trucking industry;

h. Knowing and intentionally using carriers and drivers that had previous safety violations, unsafe operating histories, and/or were unfit to safely operate commercial motor vehicles on public highways.

i. Failing to use carriers and drivers that were compliant with local, state, and federal laws and the Federal Motor Carrier Safety Regulations.

j. Failing to use carriers and drivers that had adequate safety plan or controls in place before being allowed to transport freight.

k. Knowing and intentionally failing to review and/or request driver qualification files, or review and/or request driving records.

l. Operating a network of chameleon carriers.

125.    The acts and omissions of Defendants were likely to deceive, induce, and mislead.

126.    Trucking Defendants' actions and omissions as set forth herein evidence a lack of good faith, honesty in fact and observance of fair dealing so as to constitute unconscionable commercial practices, in violation of the South Carolina unfair trade practices laws.

127.    As a proximate result of the acts of unfair and deceptive trade practices set forth above, Plaintiff suffered catastrophic injuries and damages.

128.    Trucking Defendants, their officers, members, contractors, agents, servants and/or employees acted willfully, knowingly, intentionally, unconscionably, unlawfully, and with reckless indifference when they committed the aforesaid acts of unfair and deceptive trade practices.

129.    Trucking Defendants are vicariously liable for the actions of their employees, agents, contractors, officers, members and/or servants under the doctrine of respondeat superior.

130.    As a result of the acts of the unfair and deceptive trade practices and/or consumer fraud described above, Plaintiff has suffered actual, ascertainable loss for which the Trucking Defendants are liable.  The unlawful trade practices engaged in by Trucking Defendants have an adverse impact on the public interest by reason of established procedures being utilized thereby creating the potential for repetition.

## **DAMAGES**

131.    Plaintiff avers that as a direct and proximate result of the Defendants' willfulness, wantonness, recklessness, negligence and/or gross negligence, he has suffered and seeks to recover for the following injuries and damages:

      a.     Actual damages and consequential damages;

      b.     Bodily injuries requiring medical treatment;

    c.     Past, present, and future physical pain, suffering, impairment, emotional distress, psychological harm, disfigurement, disability, fear, shock, anxiety, loss of enjoyment of life, and mental anguish;

    d.     Past and future medical expenses;

    e.     Permanent scarring and disfigurement;

    f.     Lost wages and diminished earning capacity.

132. Plaintiff seeks to recover a sum that will fairly and fully compensate him for damages caused by Defendants.

133. As a direct result of the willfulness, wantonness, and recklessness of the actions of Defendants, Plaintiff further seeks an award of punitive damages in a sum sufficient to punish and deter the conduct of Defendants. Plaintiff seeks punitive damages in an amount that is determined to be reasonable and fair by a jury of Plaintiff's peers.

## JURY DEMAND

134. Plaintiff requests a trial by struck jury.

**WHEREFORE**, Plaintiff prays for judgment against Defendants in a sum sufficient to adequately compensate him for actual damages, punitive damages, the costs of this action, pre-judgment interest, post-judgment interest, attorneys' fees, and any relief a jury may award, and for such other and further relief as this court may deem just and proper.

Respectfully Submitted,

HEWETT & DIAMADUROS, LLC

BY:     */s/ Brad D. Hewett*
        Brad D. Hewett
        brad@hdlawsc.com
        Fed. Id. No. 10388
        Konstantine S. "Dean" Diamaduros
        dean@hdlawsc.com
        Fed. Id. No. 13198
        2010 Gadsden Street
        Columbia, SC 29201
        803-999-4372
        Attorneys for Plaintiff